UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

PAMELA CRUMBLEY, )
)
    Plaintiff, )
)
vs. ) Civil Action No: CV-01-S-993-NE
)
ANTHONY ALLEN, an individual; )
HEALTH STRATEGIES, INC.; )
ADVANCED HEALTH CARE )
MANAGEMENT CORPORATION; )
MBAA; AMERICAN HOSPITALITY )
ASSOCIATION, INC., RON HOWARD,)
an individual; )
)
    Defendants. )

## MEMORANDUM OPINION

This action is before the court on eleven motions, listed in the margin below.[1] Upon consideration of the various motions, pleadings, briefs, and oral arguments of counsel, the court enters the following opinion addressing the dispositive issue: plaintiff's motion to remand (see doc. nos. 15 and 26).

---

[1] (1) The motion of defendants Ron Howard and American Hospitality Association, Inc. to strike plaintiff's jury demand (doc. no. 4); (2) the motion of defendants Ron Howard and American Hospitality Association, Inc. to transfer venue or consolidate (doc. no. 5); (3) the motion of defendant American Hospitality Association, Inc. to dismiss or strike state law claims (doc. no. 6); (4) the motion of defendant Ron Howard to dismiss or strike state law claims (doc. no. 7); (5) the motion of defendants Ron Howard and American Hospitality Association, Inc. for an extension of time (doc. no. 11); (6) plaintiff's motion to stay defendants' motion to strike state law claims and jury demand (doc. no. 14); (7) plaintiff's motion to remand (doc. no. 15); (8) the motion of defendants MBAA and Advanced Health Care Management Corporation to dismiss or strike state law claims (doc. no. 16); (9) the motion of all defendants for leave to conduct limited discovery (doc. no. 18); (10) the motion of defendants HealthStrategies, Inc. and Anthony Allen to dismiss, strike state law claims, or for summary judgment (doc. no. 20); and (11) plaintiff's supplemental motion to remand (doc. no. 26).

## II. DISCUSSION

Federal question jurisdiction generally is determined by the face of plaintiff's complaint. *See, e.g., Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). This concept is known as the "well-pleaded complaint" rule. *See generally*, Arthur R. Miller, *Artful Pleading: A Doctrine in Search of a Definition*, 76 Tex. L. Rev. 1781, 1782 (1998). The rule advances several principles. First, it "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Second, it preserves our federalist system by allowing state courts to develop law in which state law issues and policies predominate. *See* Miller, *supra*, at 1783. Third, it promotes efficiency by preventing the shifting of cases between state and federal courts after litigation has begun. *Id.* In accordance with these principles, a case may not be removed from state to federal court based merely on a federal defense.

> [I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

3

*Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (emphasis in original).

Even so, a defendant may remove an action asserting only state law claims when those claims are <u>completely</u> <u>preempted</u> by federal law. *Id.* at 393, 107 S.Ct. at 2430. The Supreme Court clarified the relationship between the well-pleaded complaint rule and the doctrine of complete preemption in *Caterpillar*:

> There does exist, however an "independent corollary" to the well-pleaded complaint rule, ... known as the "complete preemption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. ...

*Id.* at 393, 107 S.Ct. at 2430 (footnote and citations omitted). When determining the existence of complete preemption, the removing party bears the burden of establishing federal jurisdiction, *see Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), and all doubts about removal are to be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

Here, the face of plaintiff's complaint does not provide a basis for federal jurisdiction. Thus, whether this action is due

4

to be remanded turns upon whether plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

It is important to draw a distinction between the concept of ordinary preemption and the doctrine of complete preemption. That is because the complete preemption inquiry is jurisdictional, whereas the ordinary preemption inquiry is substantive. The Eleventh Circuit recently explained the difference in the two concepts as follows:

> Stated simply, complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court. As summarized by the Fifth Circuit,
>
>> "complete preemption" is less a principle of substantive preemption than it is a rule of federal jurisdiction. In other words, complete preemption principally determines not whether state or federal law governs a particular claim, but rather whether that claim will, irrespective of how it is characterized by the complainant, [serve as the basis for federal question jurisdiction].

Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 854-855 (11th Cir. 1999) (quoting McClelland v. Gronwaldt, 155 F.3d 507, 516-17 (5th Cir. 1998)) (bracketed alteration in original).

In the context of ERISA, the Eleventh Circuit has developed a separate and distinct test for each type of preemption. In *Butero v. Royal Maccabees Life Insurance Company*, 174 F.3d 1207 (11th Cir. 1999), the Eleventh Circuit articulated a four-part test for determining whether a plaintiff's state law claims are completely preempted by ERISA, thereby establishing federal question jurisdiction.

> Regardless of the merits of the plaintiff's actual claims (recast as ERISA claims), relief is available, and there is complete preemption, when four elements are satisfied. First, there must be a relevant ERISA plan. Second, the plaintiff must have standing to sue under that plan. Third, the defendant must be an ERISA entity. Finally, the complaint must seek compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan.

*Id.* at 1212 (citations omitted). On the other hand, the existence of "ordinary," or "defensive," preemption is determined by the express language of 29 U.S.C. § 1144(a).[2]  *Id.*  "Defensive preemption defeats claims that seek relief under state-law causes of action that 'relate to' an ERISA plan." *Id.* at 1215.

Thus, to determine whether this court may exercise jurisdiction over the present action (*i.e.*, whether plaintiff's claims are completely preempted by ERISA) it is necessary to apply

---

[2] 29 U.S.C. § 1144(a) provides:  "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...."

6

the four elements articulated in *Butero*. Here, the outcome hinges upon the first element —— whether there is a relevant ERISA plan.

The statutory definition of an "employee welfare benefit plan" is contained in ERISA § 1002(1), providing:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits....

The Eleventh Circuit deconstructed this statutory definition in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982), saying:

> By definition ... a welfare plan requires (1) a "plan, fund, or program" (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical ... benefits (5) to participants or their beneficiaries.

*Id.* at 1371; *see also Butero*, 174 F.3d at 1214 (reiterating same five elements).

Even so, not all welfare benefit plans that meet the *Donovan* criteria are governed by ERISA.

> The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee

7

>organization is the person that establishes or maintains the plan, fund, or program. <u>Thus</u>, <u>plans</u>, funds, or programs <u>under which no</u> union members, <u>employees</u> or former employees <u>participate are not employee welfare benefit plans under Title I of ERISA</u>.

*Donovan*, 688 F.2d at 1373 (emphasis supplied) (footnotes omitted).

Moreover, the Department of Labor has promulgated a regulation that excludes plans without employees from the term "employee benefit plan."

>For the purposes of Title I of the Act and this chapter, the term "employee benefit plan" <u>shall not include any plan</u>, fund or program ... <u>under which no employees are participants covered under the plan</u> ... .

29 C.F.R. § 2510.3-3(b) (emphasis supplied).

Further, sub-section (c) excludes sole proprietors "and his or her spouse" from the definition of the term "employees":

>An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse, ... .

29 C.F.R. § 2510.3-3(c)(1); *see also*, *Slamen v. Paul Revere Life Insurance Company*, 166 F.3d 1102, 1104 (11th Cir. 1999) (citing the regulation).[3]

---

[3] Defendants claim that 29 C.F.R. § 2510.3-3 has been undermined by *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), in which the Supreme Court held that the definition of "employee" under ERISA is governed by common law principles. Defendants argue that the regulation is a rejection of common law principles. The Fifth and Eleventh Circuits disagree.

In *Meredith v. Time Insurance Company*, 980 F.2d 352 (5th Cir. 1993), the

The Eleventh Circuit addressed whether a disability insurance plan covering only the sole owner of a dental practice was an ERISA plan in *Slamen*. The plaintiff in *Slamen* was a dentist who was the sole owner of his practice, which was established under the guise of a professional corporation. In 1981, the practice established a health plan providing benefits for its employees. That plan did not provide disability benefits. Rather, it was not until 1985 that Slamen purchased a disability insurance policy from Paul Revere Life Insurance Company, but that covered only himself. *Id.* at 1103. After Paul Revere refused to pay benefits, Slamen commenced an action in state court. Paul Revere removed the action to federal court asserting complete preemption under ERISA. Reviewing the *Donovan* criteria, the Eleventh Circuit held: "In order to establish an ERISA employee welfare benefit plan, the plan must provide benefits to at least one employee, not including an

---

Fifth Circuit cited *Darden*, but found: "The regulations clarify what otherwise would be an interpretive quagmire." *Id.* at 356. The court held that, under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), courts should defer to the interpretation of an administrative agency if the statute is ambiguous and the agency's reading is a permissible interpretation. *Id.* at 357. Citing its prior decision in *Robertson v. Alexander Grant Company*, 798 F.2d 868 (5th Cir. 1986), the Fifth Circuit held that deference to the agency's interpretation was required. *Id.* at 358.

The Eleventh Circuit demonstrated its approval of *Meredith* and *Robertson* in *Slamen v. Paul Revere Life Insurance Company*, 166 F.3d 1102 (11th Cir. 1999), which cited both cases and the regulation, for the proposition that "the plan must provide benefits to at least one employee, not including an employee who is also the owner of the business in question." *Id.* at 1104.

9

employee who is also the owner of the business in question." *Id.* at 1104. The court reasoned:

> ERISA excluded employer benefit plans from its broad scope because "[w]hen the employee and employer are one and the same, there is little need to regulate plan administration." *Meredith* [*v. Time Ins. Co.*, 980 F.2d 352, 358 (5th Cir. 1993)]. In light of the clear exclusion of benefit plans covering only owners from ERISA's scope, we think that it makes little sense to treat a benefit plan, which covers only a business owner such as Dr. Slamen, as a component of the employer's employee benefit program. ... In conclusion, Slamen's disability insurance policy is not an ERISA plan because all the benefits flow to the owner, Dr. Herbert Slamen. Because the plan is not governed by ERISA, Slamen's action for the recovery of benefits did not arise under ERISA and the district court was without federal jurisdiction over Slamen's claim. Accordingly, the district court erred in denying Slamen's motion to remand.

*Id.* at 1105-06. The court held that Slamen could not be considered an employee for purposes of determining whether the disability insurance policy was an ERISA plan by virtue of § 2510.3-3(c)(1). *Id.* at 1105. The court further noted that its holding was not changed by the fact that Slamen had paid the premiums for the Paul Revere policy from the assets of his professional corporation. *Id.* at 1106 n.4. Thus, "an <u>employer</u> benefit program must be analyzed separately from an <u>employee</u> benefit program absent evidence ... showing that the two programs are related." *Id.* at 1106 (emphasis in original).

10

The present action is analogous to *Slamen*. Here, the purchasers of the insurance policy were sole owners of a farming operation. The insurance policy did not cover any employees, and there is no indication that Duck River Farms now has (or ever had) any employees. Even if individuals other than plaintiff and her husband were employed by Duck River Farms, such persons did not apply for benefits under the AHA Plan. Indeed, the Plan covered only the plaintiff, her husband, and their infant son.[4] Under *Slamen*, benefit plans covering only owners are clearly excluded from ERISA's scope.

Nevertheless, defendants argue that this action involves an employee welfare benefit plan. They do not contend that the AHA plan is itself an employee welfare benefit plan,[5] but assert that

---

[4] Defendants' own records demonstrate that Marlin and Pam Crumbley are the only "employees" of Duck River Farms. They, and their newborn son, are the only individuals listed on the invoice for premium payments to the AHA Plan. A facsimile transmission from Capital Risk Management to Health Strategies, transmitted on September 9, 1998, lists Duck River Farms as a "New Sub-Group" in the American Hospitality Association. The only participants listed are Marlin and Pamela Crumbley. A "New Business Transmittal" demonstrates that enrollment applications were submitted for only two employees. An application for the MBAA plan, submitted on March 1, 2000, represents that Duck River Farms has only one eligible employee. Next to the phrase "Owner's signature," the application is signed "Marlin Crumbley." Mr. Crumbley lists his occupation as "farm owner/operator." Pamela Crumbley, and her young son, Clint, are listed as "spouse" and "child #1," respectively. Notice of removal (doc. no. 1), Ex. E.

[5] Indeed, such a contention would be in vain. This court has previously rejected a similar argument, see *Guyton v. Health Strategies*, No. CV-00-S-3095-NW (N.D. Ala. Jan. 23, 2001) (order granting motion to remand) (doc. no. 5), as have other judges on this court. *Golden v. Allen*, No. CV-01-J-0994-NE (N.D. Ala. May 24, 2001) (order granting motion to remand) (doc. no. 25) (Judge Inge P. Johnson); *Kilpatrick v. HealthStrategies, Inc.*, No. CV-00-J-3096-NW (N.D. Ala.

11

Duck River Farms has such a plan.

As outlined above, the *Donovan* test requires that this court find the following: 1) a plan, fund, or program; (2) established or maintained; (3) by an employer; (4) for the purpose of providing medical benefits; (5) to participants or their beneficiaries. Although there is no evidence that Duck River Farms has any employees, defendants seek discovery to determine whether Duck River Farms employs one or more "common law employees" who are eligible for benefits under the AHA plan. Defendants contend such employees are "participants" under ERISA. The AHA plan contains the following provision:

> All **full-time employees** regularly scheduled to work at least thirty (30) hours per work week or certain employees in a category of permanent status and to be determined by the plan administrator shall be eligible to enroll for coverage under this **Plan**.[6]

Defendants contend that a "common law employee" would be eligible for health benefits according to the terms of the AHA Plan, regardless of the employers' intent. They claim that,

> if Duck River Farms employed a single individual on a regular basis for 30 hours a week, or under some sort of permanent arrangement, there is a "participant" in Duck River Farm's health insurance plan other than the husband

---

Dec. 5, 2000) (order granting motion to remand) (doc. no. 11) (Judge Inge P. Johnson); *Pitts v. Health Strategies, Inc.*, No. CV-99-L-2523-NW (N.D. Ala. Jun. 15, 2000) (doc. no. 31) (Senior Judge Seybourn Harris Lynne).

[6] Notice of removal (doc. no. 1), Ex. C at 30 (emphasis in original).

and wife owners of Duck River Farms, regardless of whether that individual enrolled in the plan.[7]

This court finds the requested discovery unnecessary, because the *Donovan* criteria are not met, even if such "common law employees" exist. First, there is no "plan, fund, or program." In *Randol v. Mid-West National Life Insurance Company of Tennessee*, 987 F.2d 1547 (11th Cir. 1993), the Eleventh Circuit reiterated the test, first established in *Donovan*, for determining the existence of a plan. "[A] 'plan, fund, or program' [exists] under ERISA ... if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Randol*, 987 F.2d at 1550. Here, there simply is no plan. It is impossible to determine whether a plan that would admit any "common law employees" would include the health benefits purchased by the Crumbleys for themselves. Likewise, it is impossible to determine a source of financing. The AHA Plan has received no premium payments from, or on behalf of, a "common law employee." No such employee has submitted an application to AHA. There has been no employer contribution or payroll deduction by Duck River Farms. Further, if a plan existed, it has not been "established or

---

[7] Defendant's letter brief at 3.

maintained." "A plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." *Butero*, 174 F.3d at 1214. In *Butero*, the employer consulted an insurance agent, selected the terms of the group policy, completed an application form for the policy, solicited enrollments form its employees, collected money through payroll deductions, and remitted premium checks to the insurer. *Id.* at 1214. Here, plaintiff and her husband selected insurance for themselves, and paid the premiums for themselves. There is absolutely no indication that they spoke to other employees about insurance, offered benefits to them, completed applications on their behalf, collected money through payroll deductions, or contributed to premium payments. Because there is no "plan, fund, or program" that has been "established or maintained," plaintiff's claims are not completely preempted by ERISA under the *Donovan* test.

### III. CONCLUSION

For the foregoing reasons, this action is due to be remanded to the Circuit Court of Cullman County, Alabama. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

14

DONE this the 10th day of July, 2001.

_____
United States District Judge